UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS BALTRUSAITIS, *et al.*,

       Plaintiffs,                 Civil Action No. 23-cv-10861
                                               HON. BERNARD A. FRIEDMAN

vs.

INTERNATIONAL UNION UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, *et al.*,

       Defendants,

_____/

## OPINION AND ORDER DENYING MOTION FOR REMAND

This matter is before the Court on plaintiffs' motion for remand. (ECF No. 40). Defendants FCA US LLC ("FCA"), Alphons Iacobelli, and International Union United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") have filed responses in opposition, and plaintiffs have replied. (ECF Nos. 46, 48, 49, 52, 53, 54). The Court does not believe oral argument would aid in the resolution of this motion and shall decide it without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion is denied.

I. <u>Background</u>

Plaintiffs, engineers currently or formerly employed by FCA, brought this action in Michigan state court against FCA, FCA officials, UAW, UAW officials, and John Does. (ECF No. 1, PageID.12-15). Plaintiffs allege that defendants were engaged in a "bribery scheme which caused the Plaintiffs to lose wages, benefits and other monetary damages and caused them mental anguish." (*Id.*, PageID.14). More particularly, plaintiffs allege that

> Defendants operated for the common purpose of paying funds from FCA and others to UAW officials in return for concessions that benefited FCA, but which were detrimental to Plaintiffs. Among other acts and omissions, the Defendants illegally manipulated the collective bargaining and grievance processes and diverted FCA funds, including funds from the National Training Center to the Defendants who were UAW officials. Through the bribes, the FCA Defendants also obtained from the UAW Defendants' [sic] agreement to concessions through side agreements and memoranda of understanding that were not even part of the collective bargaining process or the grievance process.

(*Id.*). Among other things, plaintiffs allege that under a corrupt arrangement between UAW defendants and FCA defendants, in 2011 FCA transferred plaintiffs from the Chrysler Technical Center in Auburn Hills, Michigan to the Trenton Engine Complex in Trenton, Michigan in violation of their collective bargaining agreement and that FCA was able to do so because the FCA defendants had bribed the UAW defendants in exchange for company-friendly concessions on labor issues. (*Id.*, PageID.16-18). Plaintiffs allege that

2

> among the "company-friendly positions" that the UAW and its officials took in exchange for receiving bribes from FCA were the UAW's allowance, with no resistance, of the transfer of Plaintiffs from Auburn Hills to Trenton, the lax and uneven enforcement of the transfer based on favoritism towards certain employees, the unfavorable handling of Plaintiffs' complain[t]s and grievances, failure to take any action when non-bargaining unit employees took work from bargaining-unit members such as Plaintiffs and the failure to take any action when the transfers were administered unfairly. In addition, by information and belief, the union and its executives and other officials, including the UAW Defendants, continued to oppose Plaintiffs' appeals of the withdrawal of grievances throughout the entire process.

(*Id.*, PageID.34).

Count I of the complaint is for silent fraud and positive fraud against UAW defendants.[1] (*Id.*, PageID.51). Plaintiffs assert that the UAW defendants "owed a fiduciary duty of loyalty to the Plaintiffs" which included a duty to disclose "facts material to the processing of union members' grievances." (*Id.*). In terms of silent fraud, plaintiffs assert that while their grievances were being processed, the UAW defendants "were silent and failed to apprise the Plaintiffs that the UAW defendants had accepted, and were accepting, bribes which led to their negative processing of the Plaintiffs' grievances, including the dismissal and withdrawal of those grievances." (*Id.*, PageID.52). With regard to positive fraud, plaintiffs assert

---

[1] Notably: the heading for Count I references defendants UAW, Williams, Jones, Jewell, King, and Mickens. (*Id.*, PageID.51). The second paragraph of text under Count I, however, refers to UAW, Durden, Brown, Williams, Jones, Jewell, King, and Mickens. (*Id.*). Elsewhere in the complaint, defendants Durden and Brown are identified "FCA Defendants." (*Id.*, PageID.15).

3

that "UAW Defendants made positive representations to the Plaintiffs that the UAW Defendants were advocating for the Plaintiffs' grievances when the UAW Defendants had withdrawn or dismissed the grievances." (*Id.*, PageID.53). Plaintiffs say that if the UAW defendants had told them of the bribery scheme, "the Plaintiffs could have reported the bribery scheme to law enforcement, caused the resignation or dismissal of the UAW Defendants from their union positions, and obtained the representation of honest union officials to address their complaints and prosecute their grievances." (*Id.*); *see also* (*id.*, PageID.54).

Count II of the complaint is for breach of fiduciary duty against the UAW defendants.[2] (*Id.*, PageID.56). Plaintiffs again assert that the UAW defendants "owed a fiduciary duty of loyalty," including a "duty to employ due diligence to advocate for the Plaintiffs' legitimate grievances opposing their transfer to the Trenton Engine Complex (TEC) located in Trenton, Michigan." (*Id.*). Plaintiffs urge that by accepting bribes from FCA defendants "in exchange for promoting company-friendly policies and taking company-friendly positions on labor disputes, including the grievances filed by the Plaintiffs," UAW defendants breached their fiduciary duty. (*Id.*, PageID.57). Plaintiffs assert that this "led to

---

[2] Here, the heading of Count II refers to defendants UAW, Durden, Brown, Williams, Jones, Jewell, King, and Mic[k]ens. (*Id.*, PageID.56). The second paragraph of text under Count II likewise refers to UAW, Durden, Brown, Williams, Jones, Jewell, King, and Mickens. (*Id.*). But again, elsewhere in the complaint defendants Durden and Brown are identified as "FCA Defendants." (*Id.*, PageID.15).

4

the Defendants' unjustified negative decisions on the Plaintiffs' grievances, including the dismissal and withdrawal of those grievances." (*Id.*). Plaintiffs also again assert that "the UAW Defendants made positive representations to the Plaintiffs that the UAW Defendants were advocating for the Plaintiffs' grievances when the UAW Defendants had withdrawn or dismissed the grievances." (*Id.*).

Finally, Count III of the complaint, for civil conspiracy, is asserted against all defendants. (*Id.*, PageID.59). Plaintiffs allege that "[t]he concerted action of the Defendants was to accomplish a criminal or unlawful purpose and/or was to accomplish a lawful purpose by criminal or unlawful means, because the giving or receiving of bribes between the [defendants] is against federal criminal law . . . and against state criminal law." (*Id.*). Plaintiffs say that "[t]he civil conspiracy of all Defendants materialized in the breach of fiduciary duty, silent fraud, and actual fraud of the UAW Defendants all of which benefitted the FCA Defendants by enhancing FCA's positions in matters involving negotiations with the UAW including the grievances of the Plaintiffs." (*Id.*, PageID.59-60).

The case was removed to this Court in April of this year by UAW. (*Id.*, PageID.2). UAW's notice of removal urges that

> Plaintiffs' claims arise under federal law, as they are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs' claims are also completely preempted because they are essentially duty of fair representation claims recharacterized as state common law claims. Separately, Plaintiff[s'] Breach of Fiduciary Duty claim on its face arises under

5

>federal law, namely Section 501 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a). *See* Compl. ¶ 156. And to the extent that some of Plaintiffs' causes of action do not arise under federal law, this Court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a).

(*Id.*, PageID.4).

As noted in the complaint itself, this is not the first time plaintiffs have appeared in federal court in relation to these issues. "On October 16, 2020, Plaintiffs filed a lawsuit in the U.S. District Court for the Eastern District of Michigan, case number 20-cv-12793 alleging violations of federal and state laws relating to the above-described bribery scheme by Defendants." (*Id.*, PageID.50). That case was assigned to the Honorable Robert H. Cleland. Judge Cleland granted defendants' motions to dismiss. (20-cv-12793, ECF No. 69). He found that the federal claims in that case, brought under the Racketeer Influenced and Corrupt Organizations Act and the Labor Management Relations Act, were barred by the statute of limitations. (*Id.*, PageID.1300). Plaintiffs have appealed that ruling to the Sixth Circuit Court of Appeals and the appeal remains pending in Case No. 22-1383. Judge Cleland dismissed the state law claims without prejudice. (*Id.*, PageID.1301).

In the present motion, plaintiffs seek remand of the instant case back to state court, urging that this Court lacks subject matter jurisdiction. (ECF No. 40).

II. Legal Standard

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (footnote omitted). If there is not diversity of citizenship, then pursuant to what is known as the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* Generally, a defendant may not remove a case to federal court on the basis of the defense of federal preemption. *Id.* at 392-93.

> There does exist, however, an "independent corollary" to the well-pleaded complaint rule, known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.* at 393 (citations and footnote omitted). This is "applied primarily in cases raising claims pre-empted by § 301 of the [Labor Management Relations Act]." *Id.*[3] Preemption in the labor law context has a "necessarily broad reach" and

---

[3] Section 301 of the Labor Management Relations Act states as follows:
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United

7

extends beyond suits alleging contract violations. *Adamo Demolition Co. v. Int'l Union Operating Eng'rs Loc. 150, AFL-CIO*, 3 F.4th 866, 872-73 (6th Cir. 2021). Plaintiffs may not evade removal through artful pleading. *Id.* at 873.

There is a two-step test to determine whether the complete preemption doctrine applies to make a claim subject to removal. *Id.*

> [T]he court must first "examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." A claim is independent of a labor agreement if all elements of it can be proven without interpreting that labor agreement. If the claim does not require interpreting the collective bargaining agreement terms, the court must then assess "whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." If the claim "does not invoke contract interpretation" and "is borne of state law," then it is not preempted. But if the claim does require interpretation of the agreement or the agreement created the right, the claim is preempted.

*Id.* (citations omitted). When performing this analysis, the Court is to look at "'the essence of the plaintiff's claim . . . to determine whether [it] attempt[s] to disguise what is essentially a contract claim as a tort.'" *Id.* (citation omitted). "Neither a tangential relationship to a collective bargaining agreement nor the defendant's assertion of the contract as an affirmative defense makes a claim dependent on a collective bargaining agreement." *Id.* (cleaned up).

---

States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Claims which are not themselves preempted may still fall within the Court's supplemental jurisdiction if they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a); *Kitzmann v. Local 619-M Graphic Commc'ns. Conf. Int'l Bhd. Teamsters*, 415 F. App'x 714, 719-20 (6th Cir. 2011).

III.  Analysis

    *a. Plaintiffs' silent and positive fraud claim is preempted.*

Plaintiffs' first cause of action, for silent and positive fraud against the UAW defendants, requires interpretation of the collective bargaining agreement and is thus preempted. *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (a claim is preempted under the first prong of the test if "proof of the state law claim requires interpretation of collective bargaining agreement terms").

In Count I, plaintiffs allege that the UAW defendants owed them a fiduciary duty of loyalty, including a duty of disclosure regarding how their grievances were being handled. (ECF No. 1, PageID.51). Plaintiffs allege, however, that the UAW defendants both failed to apprise plaintiffs that they were accepting bribes, which led to the negative processing of plaintiffs' grievances (silent fraud), and that the UAW defendants made false representations that they were advocating for plaintiffs' grievances when they had in fact withdrawn or dismissed them (positive fraud). (*Id.*, PageID.52-54).

9

At the heart of plaintiffs' claim is the assertion that UAW defendants inappropriately withdrew or dismissed their grievances. That is: plaintiffs allege that the grievances were meritorious and raised legitimate concerns that the transfer to the Trenton Engine Complex violated the collective bargaining agreement, but that the UAW defendants withdrew or dismissed the grievances because they had received bribes. *See* (ECF No. 1, PageID.16-18) (describing the transfer and how it allegedly violated the collective bargaining agreement); (*id.*, PageID.41) ("the UAW Defendants told the Plaintiffs that the union was handling their grievances in the normal course of business and that, any withdrawal or dismissal of a grievance was due to lack of merit, when in reality those Defendants had never considered the merits of Plaintiffs' grievances"); (*id.*, PageID.52) (alleging that UAW Defendants failed to tell Plaintiffs they were accepting bribes, "which led to their negative processing of the Plaintiffs' grievances"); (*id.*, PageID.53) (alleging that UAW Defendants fraudulently represented that they "were advocating for the Plaintiffs' grievances when the UAW Defendants had withdrawn or dismissed the grievances").

The claim is not cognizable without plaintiffs' underlying assumption that the grievances had merit. If the transfer did not violate the collective bargaining agreement, plaintiffs could not fault the UAW defendants for withdrawal or dismissal of the grievances, and any statement by the defendants that the

10

grievances lacked merit would be true. The Court cannot resolve this issue without interpreting the terms of the collective bargaining agreement.

Plaintiffs urge that interpretation of the agreement is not necessary because, but for the bribery scheme, FCA would not have implemented the transfer. (ECF No. 40, PageID.604). But this argument skips over a crucial step. Plaintiffs' assertion that the transfer was problematic relies entirely on the collective bargaining agreement. Without any agreement restricting a transfer, plaintiffs would have no grounds upon which to object to it, as companies are generally free to transfer their workers for any reason or for no reason at all. The Court will thus need to ascertain whether the agreement in fact limited defendants' ability to implement the transfer.

Plaintiffs' comparison of this case to *Swanigan v. FCA US LLC*, 938 F.3d 779 (6th Cir. 2019) is misplaced. *See* (ECF No. 40, PageID.605) (urging that the Sixth Circuit has ruled that federal courts lack jurisdiction where the claim is based upon fraud and collusion and not a breach of the collective bargaining agreement). In *Swanigan*, the Sixth Circuit examined whether plaintiffs' complaint alleged that the employer breached the collective bargaining agreement, as would be required to state a "hybrid claim" under § 301. *Swanigan*, 938 F.3d at 784. The plaintiffs' complaint here does not include a "hybrid claim" under § 301. Rather, this complaint facially asserts state law claims and the Court must determine whether

11

they are preempted and appropriately removed to this Court. Furthermore, the underlying premise of plaintiffs' claim does rely on an assertion that defendants violated the agreement, whether explicitly stated as such or not.

Plaintiffs relatedly urge that their claims are not preempted because the claims do not rely on allegations that the defendants violated the collective bargaining agreement. (ECF No. 40, PageID.606). In support, plaintiffs cite to *Alongi v. Ford Motor Co.*, 386 F.3d 716 (6th Cir. 2004). Again, the comparison is misplaced.[4] In *Alongi*, the Sixth Circuit held that "claims of fraudulent inducement to sign a labor contract do not normally give rise to § 301 preemption," because they do not require a court to analyze the provisions of a collective bargaining agreement. *Alongi*, 386 F.3d at 728. Here, by contrast, plaintiffs do not claim that they were fraudulently induced to sign a labor contract, so *Alongi* is inapplicable. And contrary to plaintiffs' one-line assertion, the claims raised in the instant complaint (fraud, breach of fiduciary duty, and conspiracy) do *not* "mirror Alongi's claims for fraud, violation of MCL750.125, and for civil conspiracy." (ECF No. 40, PageID.608).

---

[4] More fundamentally, to repeat: the relevant question presented by this motion is not whether plaintiffs have included specific allegations in their complaint that defendants violated a provision of the collective bargaining agreement. Rather, the question (under the first prong of the preemption test) is whether proof of plaintiffs' claim requires interpretation of the collective bargaining agreement. *Adamo*, 3 F.4th at 873. It does.

12

Although plaintiffs observe that "[n]owhere in the three counts alleged do the Plaintiffs claim a violation of the CBA," (*Id.*, PageID.606), they may not avoid removal through artful pleading, *Adamo*, 3 F.4th at 873. Adjudication of Count I requires the Court to interpret the terms of the collective bargaining agreement, and so it is preempted and properly removed.

### b. *Plaintiffs' breach of fiduciary duty claim is preempted.*

Plaintiffs' second cause of action, for breach of fiduciary duty, is also preempted, as it similarly requires interpretation of the terms of the collective bargaining agreement. *DeCoe*, 32 F.3d at 216 (a claim is preempted under the first prong of the test if "proof of the state law claim requires interpretation of collective bargaining agreement terms").

Count II of the complaint alleges that the UAW defendants owed (and breached) a fiduciary duty of loyalty to plaintiffs which included a duty "to employ due diligence to advocate for the Plaintiffs' legitimate grievances opposing their transfer to Trenton Engine Complex (TEC) located in Trenton, Michigan." (ECF No. 1, PageID.56). Again, the heart of this claim rests upon the assertion that the grievances were meritorious and that the transfer violated the collective bargaining agreement. If the grievances were not "legitimate," as plaintiffs claim, UAW defendants would not have breached a duty in failing to advocate for their advancement. *See Humphrey v. Moore*, 375 U.S. 335, 349 (1964) ("a union must

13

be free to sift out wholly frivolous grievances which would only clog the grievance process"); *see also Blessing v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 244 F. Appx 614, 621 (6th Cir. 2007) (the "union's decisions on whether and how to pursue an employee's grievance are entitled to deference" and the decision not to pursue meritless grievances is not actionable if taken in good faith). Determining whether the grievances were legitimate will require determination of whether the transfer violated the collective bargaining agreement, and so Count II is preempted under the first prong of the test.

    c. *Plaintiffs' civil conspiracy claim is preempted.*

Plaintiffs' civil conspiracy claim, as a derivative of the other two claims, is also preempted. Count III of the complaint, asserted against all defendants, alleges that "[t]he concerted action of the Defendants was to accomplish a criminal or unlawful purpose and/or was to accomplish a lawful purpose by criminal or unlawful means, because the giving or receiving of bribes between the FCA Defendants and the UAW Defendants" violates state and federal criminal law. (ECF No. 1, PageID.59). Plaintiffs continue: "[t]he civil conspiracy of all Defendants *materialized in the breach of fiduciary duty, silent fraud, and actual fraud* of the UAW Defendants all of which benefited the FCA Defendants by

14

enhancing FCA's positions in matters involving negotiations with the UAW including the grievances of the Plaintiffs." (*Id.*, PageID.59-60) (emphasis added).

Because plaintiffs' civil conspiracy claim relies upon and is a derivative of Counts I and II, it is also preempted. *DeCoe*, 32 F.3d at 217 (where district court properly held that § 301 preempted defamation claims, plaintiff's "civil conspiracy claim, being derivative of his defamation claims, was also preempted"). As is true of the first two counts, Count III also relies upon an interpretation of the collective bargaining agreement.

>  d. *Plaintiffs' additional arguments for remand are unavailing.*

Plaintiffs advance a few additional arguments in support of their request for remand. None are persuasive.

First, plaintiffs assert that even if this Court has jurisdiction, the state court has concurrent jurisdiction because defendants have violated a state criminal law and the state has the right to protect its own citizens from abuse. (ECF No. 40, PageID.608-614). In support, plaintiffs cite to *Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25*, 430 U.S. 290 (1977), for the proposition that under certain circumstances a state court may hear tort claims involving union activities notwithstanding any concurrent federal jurisdiction. The problem with this is that *Farmer* addressed preemption under *San Diego Building*

15

*Trades Council v. Garmon*, 359 U.S. 236 (1959), not preemption under § 301. *DeCoe*, 32 F.3d at 219.[5]

Plaintiffs make multiple references to the interest the State of Michigan has in enforcing its criminal laws. *See* (ECF No. 40, PageID.610, 617). In deciding that the civil causes of action raised in this complaint are entirely preempted and thus appropriately removed to federal court, the Court does nothing to inhibit the State of Michigan from enforcing its own criminal laws.

In another vein, plaintiffs cite to a Seventh Circuit case for the proposition that a state's enforcement of an anti-bribery statute does not interfere with federal labor laws and that "the state has an interest in lifting what is in effect a private transaction cost from the shoulders of its citizens, here particularly the Plaintiffs." (ECF No. 40, PageID.612-13) (citing *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544 (7th 2012)). The Seventh Circuit case cited, however,

---

[5] As the Sixth Circuit has explained:

> The goal of *Garmon* preemption is preservation of the National Labor Relations Board's primary jurisdiction over conduct violative of sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157 and 158. As such, the *Garmon* preemption test, which involves a balancing of state and federal interests, is inapplicable to section 301 preemption, which implicates Supremacy Clause concerns. Application of the *Farmer* test could result in the court losing sight of the relevant inquiry under the section 301 test, which is whether the plaintiff is challenging a right created by the CBA, or must rely upon the CBA in order to prove an essential element of his claim.

*DeCoe*, 32 F.3d at 219-20 (citations omitted).

16

relates to preemption under the Federal Aviation Administration Authorization Act, and provides no guidance for this Court as to any exception to preemption under § 301. *See S.C. Johnson*, 697 F.3d at 546.

Likewise, plaintiffs' statements that "removal was improper because the Court need not look to federal labor law to determine whether the Defendants' acts were illegal" and that "state jurisdiction is not preempted here because there is no conflict between the state and federal law" have no bearing on the relevant question before the Court. (ECF No. 40, PageID.613). To determine whether causes of action styled as state law claims are entirely preempted under § 301, the Court does not look to whether it must interpret federal labor law or whether a conflict exists between state and federal criminal law. Rather, under the first prong of the preemption test, the Court looks to whether proof of the state law claim requires interpretation of the collective bargaining agreement terms. *Adamo*, 3 F.4th at 873.

Towards the end of the motion, plaintiffs include the following concession.

> A claim for a union's breach of the duty of fair representation about a union's acts or omissions in connection with a labor grievance is a claim under Section 301 of the LMRA. Federal labor law completely preempts such claims. But claims alleging the breach of [the] duty of fair representation in other contexts implicate only the judicially created duty to fairly represent rooted in Section 9(a) [of] the NLRA. Federal law does not preempt parallel state law causes of action dealing with breaches of fiduciary duty other than in the context of labor grievances.

17

(ECF No. 40, PageID.615) (footnote and citations omitted).  However as indicated above: this case deals entirely with the legitimacy of plaintiffs' grievances about their worksite transfer and how the defendants addressed those grievances.  The claims are, thus, preempted.

Finally, plaintiffs acknowledge that removal "is authorized when there is a separate and independent claim or cause of action arising under a federal question claim" but urge that "the separate and independent claim or cause of action must be one that would be removable if sued upon alone."  (*Id.*, PageID.616).  Arguing that "there is a single wrong (the bribes)," that arises "from an interlocked series of transactions," plaintiffs suggest that "[t]he bribery scheme drives the several causes of action across the Complaint" and "[s]tate law predominates across all the causes of action."  (*Id.*, PageID.616-17).  However, for the reasons stated above, each of the claims asserted here would be removable if sued upon alone.

Because Counts I, II, and III are each preempted under § 301 of the Labor Management Relations Act, and because plaintiffs have offered no viable exceptions to that preemption, removal was proper.  Accordingly, it is hereby,

ORDERED that plaintiffs' motion to remand (ECF No. 40) is DENIED.

**SO ORDERED.**

Dated: September 27, 2023  
Detroit, Michigan

s/Bernard A. Friedman  
Bernard A. Friedman  
Senior United States District Judge